(No. 55146.—

*In re* HAROLD SILVERN, Petitioner.

*Opinion filed June 18, 1982.*

Jerome Larkin, of Chicago, for the Administrator of the Attorney Registration and Disciplinary Commission.

Thomas P. Sullivan and Carol R. Thigpen, of Jenner & Block, of Chicago, for respondent.

JUSTICE SIMON delivered the opinion of the court:

Petitioner, Harold Silvern, was disbarred upon consent on April 11, 1974, shortly after the United States Court of Appeals affirmed his conviction on two counts of mail fraud and one of conspiracy (*United States v. Silvern* (7th Cir. 1973), 484 F.2d 879 (*en banc*)). He now seeks reinstatement. The hearing panel of the Attorney Disciplinary Commission that heard Silvern's application found him to be "rehabilitated" and "morally and ethically fit to resume the practice of law," and thus recommended his reinstatement. The Review Board, on the other hand, found that the petitioner had "failed to establish by clear and convincing evidence appropriate rehabilitation and good character," and therefore refused to recommend reinstatement. The ultimate responsibility for attorney discipline lies with this court, and after reviewing the evidence, we agree with the hearing panel. We therefore accept its recommendation of reinstatement.

Petitioner is 59 years old. Educated in Chicago, he had been a member of the Illinois bar for 21 years before moving to Arizona in 1971. His practice was varied, encompassing estates and wills, workmen's compensation, torts and contracts, with a special emphasis on personal injury during the latter part of his career. As an active

member of the Chicago Tenant's Council, he also undertook public interest work, often representing indigent tenants in matters involving evictions, rent control, and substandard housing.

He was convicted and disbarred for his part during the late 1960's in a scheme to defraud insurance companies. In each instance, the petitioner paid a Chicago police officer to refer personal injury claimants to him. These claimants were in turn referred by the petitioner to Dr. William Becker for treatment. Dr. Becker, who apparently had similar arrangements with several other attorneys, supplied the petitioner with an inflated medical bill, which the petitioner used to secure an inflated settlement from insurance companies. He then withheld the amount of the medical bill from the client, and without the client's knowledge split the inflated portion between himself and Dr. Becker. He was sentenced to 18 months in the Federal prison at Safford, Arizona.

The evidence of the petitioner's rehabilitation is largely undisputed. What is in issue is the conclusion that should be drawn from it. The petitioner testified that his progress toward rehabilitation began even before his conviction. After arriving in Tucson in 1971, where he moved for reasons unrelated to the indictment brought against him later that year, he became active in a variety of civic activities. He was instrumental in organizing the Tucson Opera Company and youth programs for students to participate in opera. He also helped organize a learning program for deaf and blind children. The petitioner testified that there were days on which he devoted 10 or 12 hours to these charitable activities.

While in prison, the petitioner took an active role in improving the lot of his fellow inmates. He discovered that although many of the prisoners at Safford lacked a high school diploma, the prison had no educational programs. He discussed the problem with the prison com-

mandant, and as a result the commandant contacted a representative from a local college. The petitioner and the college representative organized classes designed to prepare prisoners for a high school equivalency examination. He testified that he traveled from barracks to barracks encouraging inmates to enroll and to participate actively in the program. In addition, he helped to organize a chapter of the Jaycees at Safford, and he became its first president. One of the purposes of this group was to conduct discussions of the criminal justice system. All of this was in addition to his regular prison duties.

The petitioner was released from prison in November of 1974. A few months later, he joined Urban Engineering, an engineering firm, as its general business administrator, responsible for bookkeeping, checks, deposits, receipts, and accounts receivable. He performed his duties competently and honorably for a little over a year with no complaints from his partners, and left the position on good terms only when it became evident to him that his lack of an engineering background handicapped his firm. His work earned him the respect of his partners, one of whom wrote a letter on his behalf calling him "a very hard worker, honest and of the highest character."

Silvern later applied to the Arizona Department of Real Estate for a real estate license. In his application, he disclosed his conviction. Although a license was initially refused, the petitioner requested a hearing and the hearing officer found the petitioner to be "a person of honesty, truthfulness and good reputation." He stated:

> "[Mr. Silvern] spoke with total candor regarding his conviction for mail fraud, the penalties he has paid since then, the demonstrable measures taken toward his rehabilitation and his desire to be able to expand his evident broad base of civic-oriented contributions to include a return to business endeavors, as well as his ability to do so."

Concluding that the petitioner "will, if anything, go out of his way to conduct himself in the real estate profession in

such a fashion as to be beyond reproach," the hearing officer recommended that a real estate license be granted, and petitioner received one.

The petitioner became associated with the real estate firm of A.P. Brown & Company. He still holds that position. His work includes handling residential, commercial and industrial real estate.

Silvern has been spending much of his remaining time reading the law at the University of Arizona law library. Recently he reviewed all noteworthy articles, beginning with 1971 issues, appearing in the Illinois Law Journal.

At the hearing, the petitioner testified that he deeply regrets his actions. He placed $677, the amount of the fees involved in the cases for which he was convicted, in trust with his attorney for payment to the insurance companies, if they could be identified, or as a charitable donation. The money ultimately was given to the Legal Assistance Foundation of Chicago.

The petitioner's long-time friend, Dr. Jerome Gross, testified on his behalf. Dr. Gross told the hearing panel that there was no question in his mind that the petitioner was ready to take his place again as a lawyer and conduct himself in an honorable and trustworthy way.

The Administrator presented no independent evidence of lack of rehabilitation. He argues, however, that the petitioner has failed to prove rehabilitation and fitness to practice law by clear and convincing evidence. While we agree that is the standard to which the petitioner must conform (*In re Wonais* (1979), 78 Ill. 2d 121), we believe that the petitioner has in fact met it.

The Administrator first points to the petitioner's application for a real estate license as evidence of his lack of contrition. In the application, Silvern detailed the facts behind his conviction. He referred to the fact that he was given an *en banc* rehearing by Court of Appeals for the Seventh Circuit and called such proceedings "unusual." He

also referred to a certain special jury instruction known as an Allen charge given at his trial as "unfairly tending to coerce [juries into] a guilty verdict." In doing so, however, he was only describing the conclusion of the United States Court of Appeals, which held that the particular Allen instruction given in his case should be banned in all future cases, but did not reverse Silvern's conviction because it felt no prejudice had occurred. We do not agree that these statements show a lack of regret. It is undisputed that the petitioner freely admitted his guilt and regret to the Arizona authorities, just as he has in this case. The statements made on the application were made only to explain fully the circumstances surrounding his trial and appeal, as he was requested to do. They in no way indicate an intent to minimize his guilt.

Next, the Administrator argues that the petitioner has not demonstrated a current knowledge of the law, that his reading at the University of Arizona law library and his recent review of developments in Illinois law reported in the Illinois Law Journal are inadequate to prepare him to practice law. Someone with as much legal experience as the petitioner need not spend every waking hour keeping up with the law to qualify for readmission to the bar, especially when he must work in other pursuits for a living. The hearing panel found that the petitioner had kept abreast of the law; the Review Board did not disturb that finding. We believe it was established by clear evidence.

The Administrator is also dissatisfied with the petitioner's attempts at restitution, pointing out that the petitioner made no effort to return the money taken from the insurance companies until he applied for reinstatement. The Administrator contends that the petitioner could have discovered the identity of the true victims of his crimes if he had tried harder. Although an early and full restitution to the true victims would have strengthened the petitioner's case, we do not feel that this should be used to defeat Silvern's

petition. (See *In re Thomas* (1979), 76 Ill. 2d 185, 191 (restitution "not the controlling consideration").) The delay was in part caused by the petitioner's inability to remember which insurance companies were involved. Furthermore, we are not inclined to believe that the petitioner purposely slighted these true victims in favor of the Legal Assistance Foundation. Instead, it appears that he and his attorneys gave up on trying to identify them.

The central issue then is whether the petitioner has presented enough evidence for us to conclude with the requisite certainty that he has changed and now is unlikely to repeat his past mistakes. We believe that he has. In so finding, we are influenced by the fact that the petitioner's co-conspirators, whose cases for reinstatement were no stronger than petitioner's, have been readmitted. See, *e.g., In re* Reicin (1978), 77—CH—26, approved M.R. 1650; *In re* Zalutsky (1978), 77—CH—23, approved Docket No. 49024.

We do not intend by this opinion to establish a formula that the unscrupulous can mechanically follow in order to gain readmittance to the bar. Such a state of affairs would be intolerable and would seriously hamper proper administration of attorney discipline. Four major charitable activities, two responsible jobs, attempted restitution coupled with a charitable donation, and the study of law do not add up to certain reinstatement. Each case must be decided on its own facts.

Nonetheless, while we have no qualms about rejecting a petition which we believe shows that rehabilitation is more probable than not, but yet does not rise to the level of clear and convincing evidence, we must not reject a petition that does in fact demonstrate rehabilitation by clear and convincing evidence.

The only other issue raised by the Administrator is one of evidence. Various letters from civic and cultural leaders in Arizona were admitted for the purpose of corroborating Silvern's testimony with regard to his community activities

and contributions and to show how he is generally regarded in the community. The letters contained no information the petitioner had not already testified to. The hearing panel admitted the exhibits "for such value as it may have." The Review Board found that this was error, agreeing with the Administrator's contention that the letters are hearsay and therefore inadmissible.

*In re Melin* (1951), 410 Ill. 332, held that common law rules of evidence apply to disciplinary proceedings. In *In re Heirich* (1956), 10 Ill. 2d 357, 367, however, this court held that technical rules of evidence, including the hearsay rule, need not be mechanically followed in attorney discipline cases. Letters and affidavits have been considered in previous attorney discipline cases, apparently without the Administrator's objection. (See, *e.g., In re Wigoda* (1979), 77 Ill. 2d 154; *In re Thomas* (1979), 76 Ill. 2d 185; *In re Steinbrecher* (1973), 53 Ill. 2d 413, 419-20.) Under the circumstances we believe that the hearing panel had the discretion to admit the letters into evidence. They were of minor significance to the petitioner's case. There were more than a dozen of them, and the cost of bringing the authors to Chicago to testify would have been prohibitive. Moreover, the Administrator did not dispute any of the information contained in the letters.

For the foregoing reasons, we find that the petitioner has carried his burden in demonstrating his rehabilitation.

*Petitioner reinstated.*