(No. 61413.—

*In re* DAVID MARK ROTHENBERG, Petitioner.

*Opinion filed October 3, 1985.*

314

GOLDENHERSH and MILLER, JJ., took no part.

Robert B. Oxtoby, of Springfield, for petitioner.

Daniel Drake and Peyton H. Kunce, of Springfield, for the Administrator of the Attorney Registration and Disciplinary Commission.

JUSTICE RYAN delivered the opinion of the court:

The petitioner, David Mark Rothenberg, was disbarred on consent (87 Ill. 2d R. 762) on January 31, 1977, shortly after his conviction in Federal court of conspiracy to transport stolen goods in interstate commerce and aiding and abetting the transportation of stolen goods in interstate commerce. Both convictions were affirmed by the United States court of appeals in October 1977. He filed a petition for reinstatement (94 Ill. 2d R. 767) on June 10, 1983. Following an evidentiary hearing, a panel of the Hearing Board of the Attorney Registration and Disciplinary Commission recom-

mended that the petition be denied. The petitioner filed exceptions. The Administrator, although urging that the Hearing Board's report and recommendation be affirmed, excepted to the admission of petitioner's group exhibit No. 1, which consisted of approximately 30 letters supporting the petition for reinstatement. The Review Board affirmed the Hearing Board's recommendation that the petition be denied but found that the panel of the Hearing Board erred in admitting the letters. The petitioner has filed exceptions.

At the evidentiary hearing conducted by the hearing panel, the following evidence was presented in regard to the conduct of the petitioner prior to his disbarment. After his admission to the bar of Illinois in 1969, the petitioner worked as an associate for John Norton, an attorney in Belleville. He subsequently left that job, without giving notice to his employer, and took with him case files with an estimated value of $100,000. The petitioner had not been given authority to take the files. In March 1972, the petitioner was indicted for the offense of solicitation, in that "he, with the intent that the offense of abortion be committed, encouraged and requested Eugene White to commit that offense on Eloyce Wells." The petitioner had been having an affair with Ms. Wells. The charge was later dismissed with prejudice after the statute on which it was based was declared unconstitutional.

The petitioner was indicted in May 1975 for murder, solicitation to commit murder, and conspiracy to commit murder. The charges stemmed from the death of Ms. Wells' common law husband, William Wells. A jury found the petitioner not guilty of murder and solicitation, but guilty of conspiracy. The trial court subsequently granted the petitioner's motion for judgment not withstanding the verdict on the latter count. On at least two occasions, just prior to Wells' death, the petitioner had men

call Wells and threaten his life. Those calls were characterized as a "stupid practical joke" by the petitioner at the evidentiary hearing before the hearing panel. Also in connection with the murder of Wells, the petitioner told a polygraph examiner that he had wanted to have Wells killed, but that a hit man cost too much money. The petitioner characterized that remark as being a "very flippant answer."

In November 1975, the petitioner was indicted for the offenses of conspiracy to transport stolen goods in interstate commerce and aiding and abetting the transportation of stolen goods in interstate commerce. The charges stemmed from his participation in a conspiracy to transport across State lines stolen jewelry worth over $100,000. As previously stated, the petitioner was found guilty of both counts. He received a 2½-year sentence as to count I and as to count II was placed on probation for a period of three years to follow the period of imprisonment. The period of probation ended in June 1983, the same month that he filed his petition for reinstatement. In May 1976, the petitioner was indicted in Federal court for obstructing justice and conspiracy to obstruct justice by attempting to influence a prospective witness in a Federal case. A jury found him not guilty on both counts.

The following evidence was presented in support of the petitioner's reinstatement petition. While in prison he acted as a reading instructor, joined several self-improvement clubs, and helped organize religious services for members of the Jewish faith. After his release from prison he performed voluntary charity work for a Belleville radio station which provides radio broadcasts for the blind. He has been continuously employed since his release from prison and was working as a chemical salesman at the time his petition was filed. Subsequent to his divorce from his first wife, which occurred at the time

he went to prison, the petitioner has supported his children financially and has maintained close contact with them. He assisted his father and stepmother prior to her death from cancer and continues to help his father, who is in poor health. He has lost weight, exercises regularly, and has taken college courses in computer programming. He has attempted to keep up with the changes in the law by reading bar journals. As to his conviction, the petitioner stated in his petition that "he has had a long opportunity to reflect on the error of his actions and sincerely regrets any participation he had in the events leading to the surrender of his license."

Several witnesses testified on the petitioner's behalf before the hearing panel. Dr. Francis Bihss, a physician who had known the petitioner for about 20 years and was a good friend of the petitioner's father, testified that in his opinion the petitioner is capable and trustworthy and deserves a second chance. Dr. Bihss stated that he was aware of the petitioner's convictions and imprisonment. The petitioner's former wife, Diane Rothenberg, testified that he had been extremely supportive both financially and emotionally since their divorce. Sheldon Weinstein, an attorney and former law school classmate, believed that the petitioner's reputation among his associates for honesty and integrity is good. Stewart Nayer, who had been the petitioner's supervisor at an employment agency where he had worked for four years after his release from prison, testified that the petitioner's present reputation for honesty, integrity, and fair dealing is good. The petitioner's present wife, Stephanie Friedman, whom the petitioner married in June 1983, testified that he has been a good husband.

The hearing panel also considered the evidence deposition of Roza Gossage, an attorney in Belleville. Gossage had known the petitioner since 1974, had represented him on various matters after his convictions were

affirmed, and had reviewed his petition for reinstatement. The petitioner had also worked for her husband for a period of time after his release from prison. Gossage testified that the petitioner's reputation among his associates for honesty and integrity "seems to be good." Finally, the hearing panel admitted into evidence about 30 letters offered by the petitioner which were written by a variety of individuals in support of his petition for reinstatement. Included were letters from Bihss, Weinstein, Nayer, and Gossage.

Several witnesses also testified before the hearing panel in opposition to the petitioner's reinstatement petition. Gary Peel, president of the Madison County Bar Association, convened a meeting of that organization after being notified by the Administrator of the Attorney Registration and Disciplinary Commission of the petitioner's reinstatement petition. (94 Ill. 2d Rules 767(d), (e).) All of the approximately 100 members present at the meeting voted against the petitioner's reinstatement. Peel stated that the petitioner's present reputation for truth and honesty among his peers in the area where he once practiced law is "bad to poor." William Sherwood, secretary of the Madison County Bar Association, was present at the same meeting. Although he had never met the petitioner, it was Sherwood's opinion that the petitioner's present reputation in the community is "one of an unsavory character." Marshall Smith, who was an assistant State's Attorney in Madison County in 1975 during the petitioner's murder trial, was also present at the meeting. Smith testified that "nobody would ever confuse truth and veracity with his [petitioner's] reputation." Robert Trone, an assistant State's Attorney in Madison County who had prosecuted the petitioner during his murder trial, also testified. In his opinion the petitioner's present reputation for truth and honesty within the legal profession of Madison County and with

the general public is "not good."

Robert Wells, Jr., president of the St. Clair County Bar Association, was also notified by the Administrator of the petitioner's reinstatement petition. At a meeting attended by approximately 55 members, a resolution was passed, with only one dissenting vote, opposing the petitioner's reinstatement. Although Wells had not had any personal experience with the petitioner, it was his opinion that the petitioner's present reputation for truth and honesty is "poor." Robert Schmieder, the attorney who cast the dissenting vote at the bar association meeting, explained that he had objected to the resolution because it was incorrectly phrased, not because he favored the petitioner's reinstatement. Schmieder testified that the petitioner's present reputation in the community is "bad."

Additional testimony regarding the petitioner's reputation was presented by Phillip Montalvo and John Norton. Montalvo, an attorney in Belleville, testified as to a suit brought against the petitioner stemming from his work as the attorney for an estate. Montalvo stated that in his opinion the petitioner's present reputation for truth, honesty, and veracity among his peers is "bad." Norton, the petitioner's former employer, testified that the petitioner's present reputation in the community where he once practiced law is "really bad."

Other evidence presented by the Administrator in opposition to the petitioner's reinstatement related to his failure to comply with Supreme Court Rule 764 (87 Ill. 2d R. 764) and his failure to fully comply with various provisions of Attorney Registration and Disciplinary Commission Rule 11.1, which pertains to petitions for reinstatement. (The rules of the Commission have been renumbered, and the substance of Rule 11.1 is now contained in Rule 402 of the Commission.) Supreme Court Rule 764 (87 Ill. 2d R. 764) provides that, within 21 days

after an attorney has been disbarred on consent, the attorney must notify all clients to whom the attorney is responsible for pending matters of the fact that he cannot continue to represent them. Prior to his disbarment, the petitioner represented the administrator of an estate. He did not withdraw as attorney of record after his disbarment and did not notify the parties of his disbarment. In addition, the petitioner failed to set forth in his petition the details of his compliance with Supreme Court Rule 764 as required by Commission Rule 11.1(16).

The Administrator also raised the following technical objections to the information contained in the petitioner's reinstatement petition. In his response to Commission Rule 11.1(5) the petitioner failed to list a business relationship he had with an auto broker who ran a used-car business. The relationship started almost immediately after the petitioner's disbarment on consent and continued for a period of approximately 11 months. The petitioner bought several cars together with the auto broker and "monitored" his "investments" at the broker's used-car lot. The petitioner acknowledged in his testimony before the hearing panel that he was "associated" with the auto broker but claimed that he was not an "employee" because the two never made any money.

Commission Rule 11.1(7) required the petitioner to disclose the amount of his monthly income and the sources from which that income was derived during the period of his disbarment on consent. Commission Rule 11.1(22) required him to submit copies of his Federal and State income tax returns for each of the five years preceding the filing of his petition in 1983 and for each year during which he was disbarred on consent. The income figures provided by the petitioner in response to Commission Rule 11.1(7) were not consistent with the income figures contained in his income tax returns. The petitioner admits that there are discrepancies but notes that

those discrepancies are apparent because he attempted to reconstruct his income from various sources. The petitioner did not submit copies of his State income tax returns for all the years required by Commission Rule 11.1(22).

Commission Rule 11.1(9) required the petitioner to state whether his disbarment on consent was "related to a misappropriation or failure to account for any monies, a financial benefit to him or a financial detriment to anyone." The rule requests information regarding the "amounts involved, held or received by petitioner and the details of any restitution or accounting." As stated above, the petitioner's conviction involved stolen jewelry worth over $100,000. The petitioner failed to address the question of restitution in his petition. However, at the evidentiary hearing the petitioner explained that he had not made restitution and that as far as he knew a complete recovery of the stolen jewelry was made. He also stated that the store from which the jewelry had been stolen had not made a demand on him for restitution, that he had not been sued by the store, and that restitution was not made a condition of his probation.

Commission Rule 11.1(10) required the petitioner to state whether he had consulted with or had been treated by any physician, psychiatrist or psychoanalyst following his disbarment on consent. He stated in his petition that he had not consulted with or been treated by any of these professionals. In his testimony before the hearing panel the petitioner testified that although he had consulted with a psychologist and a psychiatrist, he had not done so for any mental or emotional disorder or by reason of addiction or possible addiction to drugs or alcohol as specified in the rule. Rather, the consultations had been related to family problems. The petitioner also stated that he had called the Attorney Registration and Disciplinary Commission regarding what was required by

the rules, including Commission Rules 11.1(10) and 11.1(5), but was just told to "answer the question."

The petitioner clearly admits that he "forgot" to report a suit that he filed against another attorney. Such a report is required by Commission Rule 11.1(6). Finally, the petitioner stated in his petition that he had "not used the designation 'lawyer' or 'attorney-at-law', or any such other title or description, in any manner, since his disbarment on consent." However, during a period of over two months after his disbarment on consent in January 1977, the petitioner issued more than 20 checks bearing the title DAVID M. ROTHENBERG LTD ATTORNEY AT LAW. See Commission Rule 11.1(15).

The petitioner's first contention is that the recommendation by both the Hearing Board and Review Board that his petition for reinstatement be denied is contrary to the weight of the evidence.

The purposes underlying both attorney disciplinary and reinstatement proceedings are to safeguard the public, maintain the integrity of the profession, and to protect the administration of justice from reproach. (*In re Nadler* (1982), 91 Ill. 2d 326, 333.) Consistent with those purposes is the principle that when a disbarred attorney petitions for reinstatement that person has the burden of introducing clear and convincing evidence of rehabilitation. (*In re Zahn* (1980), 82 Ill. 2d 489, 494; *In re McDonnell* (1980), 82 Ill. 2d 481, 486.) The burden is not on the Attorney Registration and Disciplinary Commission to demonstrate that the petitioner has not been rehabilitated or that he is not fit to practice law.

Our Rule 767 (94 Ill. 2d R. 767) sets forth the factors to be considered in determining a petitioner's rehabilitation, present good character, and current knowledge of the law. The first, and traditionally a very important factor, is the nature of the misconduct for which the petitioner was disciplined. (94 Ill. 2d R. 767(f)(1).) In the

present case, the misconduct which directly lead to the petitioner's disbarment on consent was his participation in the scheme to transport in interstate commerce stolen jewelry that was worth over $100,000. He was convicted by a jury and was sentenced by the court to 2½ years in prison, followed by a three-year period of probation.

The second factor is the maturity and experience of the petitioner at the time discipline was imposed. (94 Ill. 2d R. 767(f)(2).) The petitioner was 31 years old at the time he participated in the scheme to transport the stolen jewelry in interstate commerce and had been an attorney for five years. However, his trial in the Federal court was not the first time that his character was brought into question. Nor was his conviction an aberration or a sudden departure from the "straight and narrow." Rather, his conviction is but a further manifestation of a pattern of misconduct that began in 1969 shortly after he was licensed to practice law and took an oath to "faithfully discharge the duties of the office of Attorney and Counselor at Law to the best of [his] ability."

We have previously referred to his errant conduct and briefly restate it here. When petitioner left his first legal employment he, without authority to do so, took case files that had an estimated value of $100,000. Then, in March 1972, he was indicted for conspiracy to procure an abortion. The charge was dismissed when the abortion statute was declared unconstitutional. Nonetheless, at the time the petitioner engaged in the conduct charged in the indictment, that conduct constituted a violation of the law. Two years later, in May 1975, he was indicted for murder, solicitation to commit murder, and conspiracy to commit murder. The petitioner was acquitted on the first two counts and the trial court entered judgment notwithstanding the verdict on the last count. However, he admits that he had been having an affair

with the murder victim's common law wife. He later procured an abortion for her. He admits that he had other people call the victim and threaten his life. Furthermore, he told a polygraph examiner that he had wanted to have the man killed but that a hit man cost too much money. Although petitioner was not convicted of the criminal offenses with which he was charged, there is no question as to his conduct on which these charges were based. Petitioner's conduct may not have justified criminal convictions, but such conduct did serious damage to the legal profession and is strong evidence of petitioner's moral character. If petitioner would not have been disbarred on consent, whether or not this conduct constituted a criminal offense, the Hearing Board, the Review Board, and this court would have considered such conduct in determining whether or not petitioner should be disbarred or suspended. We therefore should consider such conduct in passing on the petition for reinstatement.

Another factor to consider is whether the petitioner has made restitution. (94 Ill. 2d R. 767(f)(4).) He claims that restitution is a "non-issue." It may well be true, as the petitioner alleges, that there was a full recovery of the stolen jewelry. However, he did not inform the Attorney Registration and Disciplinary Commission of that fact in his petition for reinstatement and has not submitted any evidence to support that statement.

Our rule also provides for the consideration of the petitioner's conduct since discipline was imposed. (94 Ill. 2d R. 767(f)(5).) As previously stated, since his release from prison, the petitioner has performed voluntary charity work, has been continuously employed, has supported his children, and has attempted to improve himself.

We are seriously concerned with petitioner's failure to notify his clients after his disbarment that he could not continue to represent them as is required by our rules

(87 Ill. 2d R. 764; Attorney Registration and Disciplinary Rule 11.1(16)).

After considering the above factors, as well as the other contentions raised by the petitioner which will be discussed below, we agree with the recommendation of the Hearing Board and Review Board that the petitioner's reinstatement petition be denied. It is our responsibility to safeguard the public, to maintain the integrity of the profession, and to protect the administration of justice from reproach. (*In re Nadler* (1982), 91 Ill. 2d 326, 333.) With that responsibility in mind, we cannot at this time say that the petitioner has established that he has brought to an end the pattern of serious misconduct that began shortly after he was admitted to the bar and culminated in his conviction in Federal court for participating in the scheme to transport stolen jewelry in interstate commerce. See *In re Thomas* (1979), 76 Ill. 2d 185, 193 ("the mere passage of time is not a sufficient ground for reinstatement").

While our rules provide a method by which a disbarred attorney may petition for reinstatement, there is no requirement that the petition be granted. Clearly, there are certain infractions that are so serious that the attorney committing them should never be readmitted to the practice of law. We do not say that petitioner's past conduct falls into this category. However, his past conduct does evidence serious moral character flaws. Petitioner has the heavy burden of showing that these flaws have been overcome. Simple protestations of reform supported by a brief period of acceptable conduct are not sufficient to convince this court that petitioner's past deficiencies which brought the legal profession into disrepute have been eradicated.

The petitioner contends that his group exhibit No. 1, which consisted of some 30 letters supporting his petition for reinstatement, was properly admitted by the

hearing panel. The Administrator contends that the Review Board correctly determined that the letters were "violative of the hearsay rule of evidence" and that they did not qualify as probative evidence. In the alternative, the Administrator argues that even if the letters are admissible, the information contained in them is not sufficient to warrant the petitioner's reinstatement.

The petitioner's group exhibit contained letters from a variety of individuals, including a car salesman, a service manager at a car dealership, a high school classmate, a law school classmate, a former neighbor, a former client, a former employer, acquaintances from a health club, the petitioner's brother-in-law, a certified social worker, a marriage and family counselor, three medical doctors, and four attorneys. The hearing panel, although recognizing that the letters were hearsay, admitted them into evidence subject to its discretion to determine what weight, if any, they should be given. It ultimately characterized the information contained in the letters as frail evidence.

We find that the hearing panel did not err in admitting the letters into evidence. Although the letters were clearly hearsay, it was within the hearing panel's discretion to admit them. (*In re Silvern* (1982), 92 Ill. 2d 188, 196.) We note that on June 22, 1984, the Attorney Registration and Disciplinary Commission adopted its Rule 9.6, which governed the admissibility of evidence. It provided in pertinent part:

> "No evidence by way of affidavit shall be admissible to establish the character or reputation of a respondent or petitioner. Evidence concerning the character or reputation of a respondent or petitioner may be limited by the Hearing Panel as the interests of justice require."

Effective April 19, 1985, Commission Rule 273 provides in part:

> "An affidavit or letter which attempts to establish the

character or reputation of a respondent or petitioner shall not be admitted. Evidence concerning the character or reputation of the respondent or petitioner may be limited by the hearing panel as interest of justice requires."

However, these rules are not applicable here because they were not adopted until after the petitioner filed his petition for reinstatement and until after the evidentiary hearing before the hearing panel was conducted. Having considered the letters along with the rest of the record, we find that they do not warrant the petitioner's reinstatement.

The petitioner's last contention is that the hearing panel erred in allowing the resolutions that were passed by the Madison County and St. Clair County Bar Associations to be considered as evidence.

As stated earlier, several bar association members testified as witnesses for the Attorney Registration and Disciplinary Commission. Gary Peel, president of the Madison County Bar Association, testified that the bar association members were notified that the petitioner's reinstatement petition would be discussed at an upcoming meeting. He stated that approximately 100 members were present at the meeting during which a resolution was unanimously passed opposing the petitioner's reinstatement. During direct examination, Daniel Drake, one of the attorneys for the Attorney Registration and Disciplinary Commission, was allowed, over the objection of the petitioner's attorney, to read to Peel a letter that the secretary of the Madison County Bar Association had written to Drake. The letter set forth the text of the resolution verbatim. However, the hearing panel denied admission of the letter itself. On cross-examination Peel stated that there were approximately 330 attorneys in Madison County and that about 160 attorneys were members of the Madison County Bar Association.

During the direct examination of William Sherwood,

secretary of the Madison County Bar Association, Drake again attempted to introduce the letter from Sherwood to himself. The petitioner's attorney objected, and the hearing panel once again denied admission. In addition, Robert Wells, president of the St. Clair County Bar Association, testified that the petitioner's reinstatement petition was discussed at a bar association meeting at which 54 of the 55 members present voted to oppose the petition. Drake submitted a letter written by Wells to Drake which expressed the bar association's opposition to the petitioner's readmission and a subsequent letter notifying Drake that a motion had actually been passed opposing the petition. Over the objection of the petitioner's attorney, the hearing panel admitted both letters into evidence. On cross-examination Wells stated that there were approximately 434 attorneys in St. Clair County and that about 300 attorneys were members of the St. Clair County Bar Association.

Assuming, *arguendo*, that the evidence was hearsay, under the rules then in effect it was within the hearing panel's discretion to admit that evidence and to determine its relevancy and materiality. As stated, Attorney Registration and Disciplinary Commission Rules 9.6 and 273 were not adopted until after the evidentiary hearing was conducted before the hearing panel.

For the reasons herein stated the petition for reinstatement is denied.

*Reinstatement denied.*

GOLDENHERSH and MILLER, JJ., took no part in the consideration or decision of this case.