(No. 67737.—

*In re* PETER C. ALEXANDER, Attorney, Petitioner.

*Opinion filed May 24, 1989.*

Theresa M. Gronkiewicz, of Chicago, for the Administrator of the Attorney Registration and Disciplinary Commission.

Warren Lupel and Charles P. Fox, of Lupel & Bunn, of Chicago, for petitioner.

JUSTICE STAMOS delivered the opinion of the court:

Petitioner, Peter Charles Alexander, was disbarred on consent (107 Ill. 2d R. 762) on June 24, 1983, shortly after his conviction in Federal court of mail fraud and racketeering arising out of the payment of bribes to deputy commissioners and other employees of the board of appeals of Cook County (the Board). The United States court of appeals affirmed the conviction, but vacated and remanded the forfeiture order for further consideration. Petitioner filed a petition for reinstatement on December 29, 1986. (107 Ill. 2d R. 767.) Following an evidentiary hearing, a panel of the Hearing Board recommended that the petition be granted. The Administrator filed exceptions before the Review Board. A five-member majority of the Review Board reversed the recommendation of the Hearing Board with two members dissenting. Petitioner has filed exceptions.

Petitioner was licensed to practice law in Illinois in 1965. Following graduation from law school, petitioner

briefly worked for Commerce Clearing House and the Attorney General's office before becoming an assistant Cook County State's Attorney in 1969. By 1970, petitioner was assigned to the real estate department of the State's Attorney's office. Petitioner handled rate objections, appearing on the county's behalf on tax deed matters and contested assessed valuations. Petitioner left the State's Attorney's office in 1971 to accept an offer of employment with the law firm Welfeld & Chaimson. Petitioner's duties mainly involved filing and litigating real estate tax objections, as well as appearing before the Board, which reviews real estate assessments made by the Cook County assessor's office for purposes of determining the real estate tax owed on property. Petitioner became a partner of the firm in 1974 and worked continually and uninterruptedly for the firm until 1983. At the time petitioner ceased practicing law, he was entitled to 17% of the partnership profits. The firm had five partners, including petitioner.

Petitioner admits that between 1976 and 1979 he paid bribes to a deputy commissioner and an employee of the Board. Petitioner was specifically indicted and convicted of paying a total of $2,500 in bribes to Deputy Commissioner Donald Erskine, $1,500 in bribes to James Woodlock, a computer operator for the Board, and a $500 bribe to Deputy Commissioner Robert Husty. Petitioner admits his participation in bribing Woodlock and Erskine, but denies any knowledge of any bribery of Husty. Petitioner admitted that he personally delivered money to Woodlock in payments of a couple of hundred dollars over a period of two years. In the case of Erskine, petitioner, a friend of Erskine, would tell Erskine to come to petitioner's firm; another one of the firm's partners would make a payment to Erskine in the presence of petitioner.

Petitioner testified, before the hearing panel, that the bribes were not for any particular case. Petitioner's firm represented many clients seeking a lowering of an as-

sessment on property before the Board. The firm's fees were based on the amount of tax saved on the property due to the lowered assessment. The indictment alleged, and petitioner does not dispute, that the firm of which petitioner was a partner filed over 260 cases for real estate assessment reductions before the Board. The indictment further charged, and petitioner does not dispute, that the firm obtained fraudulent assessment reductions in excess of $8.5 million. The total amount of fees collected by the firm based upon the reduced assessments, as charged in the indictment, was $240,000; petitioner's share of this figure, computed on the basis of his partnership interest at the time he ceased practicing law, totaled $51,874.

Petitioner testified before the Hearing Board panel that he stopped bribing people in 1979, three years before he was indicted, because he was sickened by such activity. He also testified that he stopped practicing law in 1982, shortly after he was indicted.

Petitioner was convicted of 15 counts of mail fraud and one count of racketeering based upon the payment of bribes to Erskine, Woodlock and Husty. The United States district court sentenced petitioner to a period of 30 days' imprisonment in a work release program, participation in psychiatric counseling, and five years' probation conditioned upon the performance of 500 hours of community service. Petitioner was also ordered to forfeit $51,874. The Seventh Circuit Court of Appeals affirmed petitioner's conviction but vacated and remanded the forfeiture order for further consideration. The United States Attorney's office did not pursue the case further. Probation was terminated in 1986 upon petitioner's motion.

Petitioner mainly fulfilled his community service obligation by working at the Center for Public Ministry (the Center) in Evanston, a shelter for the homeless. Petitioner worked the night shift, the only one of several hundred volunteers who was left in charge of the premises at night. Petitioner continues to do volunteer work

for the Center although his community service obligation had been satisfied approximately a year after he started working at the Center. Petitioner started working for Phoenix Bond and Indemnity Company in May 1983, where he is presently employed. Petitioner's duties include appearing at the annual Cook County tax sale and bidding on delinquent property; making data base entries in order to maintain an inventory of those properties; dealing with the county clerk's office when it advises Phoenix Bond that redemption has been made on the properties and managing and rehabilitating company-owned properties.

Petitioner called four witnesses to testify on his behalf and testified himself before the hearing panel. Petitioner's first witness, Reverend Robert N. Lynn, an Episcopal clergyman, was the director of the Center while petitioner fulfilled his community service obligation. He testified that petitioner was the only one of several hundred volunteers who the staff felt could be trusted alone from 10 p.m. to 7 a.m. when the Center was open. He stated that he remains friends with petitioner even though he is no longer the director of the Center.

Dr. David Klass, a psychiatrist, testified next on petitioner's behalf. He stated that he had known petitioner as a personal friend for about 18 or 19 years. The doctor observed that after the indictment was handed down, petitioner's life was shattered and petitioner felt terribly guilty about what he had done. After petitioner's trial, petitioner began regular consultations with the doctor. These sessions were informal and occurred every two or three weeks over a course of about four years. Dr. Klass testified that in his professional opinion, petitioner's moral position had changed since petitioner's conviction as a result of petitioner's purposeful reexamination of his moral domain. Dr. Klass further noted that in response to petitioner's marriage and the birth of his child, petitioner has begun to live a more responsible life,

grounded with community ties. In his professional opinion, he testified that petitioner was a person worthy of trust.

The third witness to testify for petitioner, an attorney and member of the Character and Fitness Committee, stated that he has known petitioner for 10 to 12 years. The witness testified that petitioner expressed a great deal of remorse and contrition over his conviction. He stated that he believed that petitioner is an expert in the areas of tax buying and tax assessments, although he stated that the two areas are completely different. He testified that he has had occasion to call on petitioner's expertise in the area of tax buying and further testified that if he needed another attorney at his firm, he would have no difficulty in hiring petitioner. He expressed his opinion that petitioner's integrity was excellent and that petitioner would never betray a trust or confidence in his profession again.

The final witness to testify on behalf of petitioner was petitioner's present employer, who is an attorney licensed to practice law in this State but who is engaged primarily in the real estate business of buying judgments on tax-delinquent real estate in Cook County, as the co-owner and primary operator of Phoenix Bond and Indemnity Company. The witness became acquainted with petitioner when the witness was working as an assistant State's Attorney. He stated that petitioner is responsible for bidding at the annual tax judgment auction for Phoenix Bond and that petitioner is responsible for investing $30 million of the company's money. The witness testified that he has a very good opinion of petitioner, as, he stated, is evidenced by trusting petitioner with the investment of $30 million.

Petitioner testified about his involvement in bribing the officials of the Board. He explained that at his trial he never denied the fact that he had bribed the officials but instead offered a legal defense dealing with the appropriateness of intangible rights as the subject of a mail

fraud indictment. He stated that he stopped practicing law before being convicted and that he had stopped participating in bribing officials in 1979, three years before he was indicted. He testified that he was sad and very remorseful about his conduct.

Petitioner also told the panel that he had testified before two different grand juries, one investigating another former partner of the firm in which he was a partner, and one investigating former Cook County circuit court Judge Robert Dempsey. Former Judge Dempsey was assigned to the county division of the circuit court of Cook County. Petitioner stated that he had been friends with Dempsey since 1966. In addition, petitioner testified that he told the grand jury that from 1972 until 1985 Judge Dempsey, another person and he owned eight parcels of vacant real estate together as joint venturers. Each person acquired an equal interest in the eight parcels through scavenger or demolition sales. From 1971 through 1982 petitioner appeared before Judge Dempsey on various matters. He admitted that during this period, he did not disclose his business relationship with Dempsey to opposing counsel. The parties terminated their business relationship in 1985 and divided the parcels on an equitable basis.

The Hearing Board concluded that petitioner was sufficiently rehabilitated and fit to resume the practice of law. Although the Hearing Board found that the nature of misconduct and petitioner's maturity and experience weighed heavily against him, it held that those factors alone were not reason enough to refuse reinstatement. The Hearing Board further stated that the testimony of petitioner, along with Dr. Klass, indicated that petitioner recognized the nature and seriousness of his misconduct and was repentant; moreover, the Hearing Board noted, petitioner's conduct since being disbarred had been commendable. The Hearing Board finally found that petitioner was not liable for restitution and had been candid and forthright in his petition.

The Review Board reversed the recommendation of the Hearing Board, finding that petitioner should not be reinstated. A five-member majority, with two members dissenting, disagreed with the Hearing Board's conclusion that the nature of the misconduct and petitioner's maturity are not sufficient reason to deny reinstatement. The Board specifically noted that petitioner's bribery of public officials was so serious an offense that reinstatement is inappropriate at this time. The Review Board also held that petitioner has not met his burden of proof concerning rehabilitation because he has not recognized the nature and seriousness of his misconduct. The Board cited, as factors evidencing petitioner's lack of realization of the seriousness of his conduct, petitioner's failure to sever his business relationship with former Judge Dempsey until 1985 and petitioner's belief that such a business relationship was not illegal or immoral.

A petitioner seeking reinstatement to the practice of law has the burden of proving by clear and convincing evidence that he should be reinstated. (*In re Carnow* (1986), 114 Ill. 2d 461, 469; *In re Gottlieb* (1985), 109 Ill. 2d 267, 269.) Rule 767(f) sets forth the following factors which are to be considered:

"(1) the nature of the misconduct for which the petitioner was disciplined;

(2) the maturity and experience of the petitioner at the time discipline was imposed;

(3) whether the petitioner recognizes the nature and seriousness of the misconduct;

(4) when applicable, whether petitioner has made restitution;

(5) the petitioner's conduct since discipline was imposed; and

(6) the petitioner's candor and forthrightness in presenting evidence in support of the petition." 107 Ill. 2d R. 767(f)(1) through (f)(6).

Petitioner initially raises the contention that the Review Board failed to make a finding that the Hearing Board's recommendation was not supported by clear and

convincing evidence as required by Rule 753 (107 Ill. 2d R. 753), and is arbitrary and capricious for being based on the Review Board's own subjective view of the evidence.

The findings of the Hearing Board and Review Board are advisory only and not binding on this court. (*In re Himmel* (1988), 125 Ill. 2d 531, 544; *In re Wigoda* (1979), 77 Ill. 2d 154, 158.) This court alone has the inherent power to govern admission to the practice of law in Illinois (*In re Mitan* (1987), 119 Ill. 2d 229, 246) and decide whether or not to grant a petition for reinstatement; the Hearing Board and Review Board, therefore, can only make recommendations concerning the disposition of the petition (*In re Carnow* (1986), 114 Ill. 2d 461, 469; *In re Harris* (1982), 93 Ill. 2d 285, 291-92).

Petitioner argues that the Review Board's recommendation is contrary to the clear and convincing evidence of petitioner's rehabilitation, repentance and contrition that was presented before the Hearing Board and not rebutted by the Administrator. The Administrator contends that the Review Board did not err in rejecting the recommendation of the Hearing Board and finding that petitioner did not meet his burden of proving that he is rehabilitated and is fit to resume the practice of law. The Administrator contends that the misconduct upon which petitioner's Federal conviction is based is so serious an offense that his reinstatement should be denied solely on that basis.

In support of his contention, petitioner states that the Review Board focused its attention exclusively on events which occurred prior to petitioner's conviction and ignored evidence of his rehabilitation since his conviction. The first factor to be considered under Rule 767(f) is the nature of the misconduct for which petitioner was disciplined, traditionally a very important factor (*In re Rothenberg* (1985), 108 Ill. 2d 313, 323). The "seriousness of a petitioner's past misconduct is unquestionably an important consideration (see *In re Mandell* (1982), 89

Ill. 2d 14, 20; *In re Groshong* (1980), 83 Ill. 2d 27; *In re Cohen* (1981), 83 Ill. 2d 521) which cannot be minimized by subsequent exemplary conduct." *In re Berkley* (1983), 96 Ill. 2d 404, 410.

Petitioner admits that he bribed public officials in order to obtain reduced valuations resulting in reduced taxes for his clients. According to his indictment, which he does not dispute, petitioner's law firm obtained fraudulent assessment reductions in excess of $8.5 million. While this was not the sole work of petitioner, his conduct contributed to that figure. Petitioner, as a partner in the firm, also personally benefitted from the reductions, in the form of partnership profits, based on the fees collected from the firm's clients whose taxes were lowered as a result of the assessment reductions.

This court has previously pointed out that "the bribery of elected officials is a serious offense that undermines the integrity of our system of government." (*In re Gottlieb* (1985), 109 Ill. 2d 267, 270.) While the officials to whom bribes were paid by petitioner may not have been elected officials, they were public officials under the direct control of two elected commissioners; Deputy Commissioner Erskine had the same authority to act on complaints as the commissioners. (*United States v. Alexander* (7th Cir. 1984), 741 F.2d 962, 963.) Bribing employees of a government agency, like the Board, implicates the same concerns as bribing a duly elected official. Moreover, "[f]or a lawyer to participate in such an offense is particularly reprehensible." *In re Gottlieb*, 109 Ill. 2d at 270.

The second factor under Rule 767(f), the maturity and experience of the petitioner at the time discipline was imposed, also weighs heavily against granting the petition, as the Hearing and Review Boards noted. At the time petitioner was disbarred he had been a licensed attorney for 18 years. For most of that time petitioner worked exclusively in the field of real estate tax litigation. One of petitioner's witnesses, a practicing attorney,

testified before the hearing panel that petitioner is an expert in the areas of tax buying and tax assessments. Petitioner became a partner in 1974 and was a partner entitled to partnership profits during the time he admits to bribing public officials. We also note that petitioner began to develop his expertise in this area of law as an assistant State's Attorney, during which time petitioner handled rate objections on behalf of Cook County. This court has considered, as an aggravating factor, that an attorney who was convicted of a crime had been a former assistant State's Attorney involved in prosecuting crimes of a similar nature. *In re Lunardi* (1989), 127 Ill. 2d 413, 422.

Another factor to be considered under Rule 767(f), when applicable, is whether petitioner has made restitution. (107 Ill. 2d R. 767(f)(4).) The Administrator contends that petitioner failed to make restitution for the partnership profits he received based upon taxes lowered for the firm's clients as a result of the devaluation of property assessments. This court has held that restitution is a condition of reinstatement except in those rare instances where repayment to the victims is conclusively established to be an impossibility. (*In re Schechet* (1985), 105 Ill. 2d 516, 522; *In re Berkely* (1983), 96 Ill. 2d 404, 412.) Petitioner argues that the Administrator has confused restitution with forfeiture; restitution, petitioner contends, is not possible in this case.

We must initially determine whether petitioner has a duty to pay restitution. Before restitution can be required there must be some basis for restitution—usually either an improper benefit to the disbarred attorney or a loss to some victim. (*In re Carnow* (1986), 114 Ill. 2d 461, 470.) In the case at bar both of these conditions have been met.

Petitioner's indictment charges, and petitioner does not dispute, that as a result of the bribes paid by petitioner and other members of his firm, the firm obtained fraudulent assessment reductions in excess of $8.5 mil-

lion. Cook County lost an unspecified amount of uncollected tax revenue due to the illegally obtained assessment reductions. Moreover, the firm collected $240,000 in fees based upon the amount of money saved by its clients. Petitioner's indictment charges that, based upon petitioner's partnership interest at the time petitioner left the firm, petitioner's share of this figure totaled $51,874. Petitioner admits that he was entitled to a share of the profits but stated that because his interests in partnership profits increased from 1976 to 1979, this figure may not accurately represent the amount of profits to which he was entitled. The United States district court ordered petitioner to forfeit $51,874. On appeal, the United States court of appeals vacated and remanded the forfeiture order for a showing that those profits were still in existence at the time of petitioner's conviction. The United States Attorney did not bring any further proceedings, and petitioner did not forfeit the money.

We believe that petitioner is liable for restitution. Although petitioner's activities alone did not result in illegal assessment reductions in excess of $8.5 million, and petitioner was not entitled to the full $240,000 in improper fees the firm earned, petitioner did commit bribery and his misconduct, along with that of the other partners in his firm, resulted in Cook County and the taxpayers of the county losing tax revenue it was entitled to. Moreover, as a partner of the firm, petitioner was entitled to approximately $51,000 of partnership profits based upon the fees earned as a result of the firm's improper conduct. The forfeiture order was based on Federal law subjecting defendants convicted of racketeering to forfeiture. Our finding that petitioner is liable for restitution is based on the fact that petitioner received an improper benefit while his misconduct, in part, resulted in a loss of tax revenue to Cook County to which it was entitled. We find, therefore, that petitioner

would have had to make restitution to Cook County to be reinstated.

Petitioner contends that although the seriousness of his past misconduct is an important consideration in deciding whether to grant a petition for reinstatement, the main focus of this court in reinstatement proceedings has been on whether the petitioner has proved he is rehabilitated and again fit to practice law. (*In re Berkley* (1983), 96 Ill. 2d 404.) He argues that this court has reinstated other attorneys who were convicted of bribing public officials upon a showing that they have been rehabilitated (*In re Silvern* (1982), 92 Ill. 2d 188; *In re Kuta* (1981), 86 Ill. 2d 154), and contends that the facts in this case leave no doubt that he has changed and is ready to resume a constructive role as an attorney.

While this court pays close attention to all the evidence regarding whether petitioner has proved that he is rehabilitated and again fit to practice law, Rule 767(f) provides six factors to be considered in determining whether petitioner is rehabilitated and should be reinstated to practice law. While the fifth factor under Rule 767(f) to be considered is petitioner's conduct since discipline was imposed (107 Ill. 2d R.767(f)(5)), the first and second factors, which we have already considered in depth, require an examination of the nature of petitioner's misconduct and the maturity and experience of petitioner at the time discipline was imposed (107 Ill. 2d Rules 767(f)(1), (f)(2)). Moreover, this court has noted:

> "While our rules provide a method by which a disbarred attorney may petition for reinstatement, there is no requirement that the petition be granted. Clearly, there are certain infractions that are so serious that the attorney committing them should never be readmitted to the practice of law." (*In re Rothenberg* (1985), 108 Ill. 2d 313, 326.)

While we make no finding that petitioner's misconduct falls under this heading, we do believe that the serious nature of petitioner's misconduct precludes reinstate-

ment at this time. While we have, as petitioner points out, reinstated attorneys who have bribed a public official or received a bribe as a public official, we have also denied reinstatement in such cases. (See *In re Gottlieb* (1985), 109 Ill. 2d 267.) While this court strives for consistency in attorney discipline and reinstatement cases (*In re Carnow* (1986), 114 Ill. 2d 461, 472), we recognize that each case of attorney misconduct and each petition for reinstatement is unique and requires an independent evaluation of its relevant circumstances (*In re Holz* (1988), 125 Ill. 2d 546, 558; *In re Cheronis* (1986), 114 Ill. 2d 527, 535).

As we have previously detailed, petitioner's misconduct, over a three-year span, not only brings the integrity of the legal profession into serious disrepute, but undermines the integrity of our system of government. In evaluating a petition for reinstatement, this court must consider the "impact that an attorney's conduct has, or will have, on the legal profession, the public and the administration of justice." (*In re Kuta* (1981), 86 Ill. 2d 154, 157; *In re Zahn* (1980), 82 Ill. 2d 489, 493.) To allow petitioner's petition for reinstatement at this time would seriously devalue the importance of restoring the public and the legal profession's confidence in the fair administration of justice.

Because of our holding, we need not address the Administrator's remaining contentions. For the reasons stated in this opinion, the petition for reinstatement on the roll of attorneys is denied.

*Petition denied.*

JUSTICE CLARK took no part in the consideration or decision of this case.