(No. 68664.—

*In re* ANTHONY JOSEPH POLITO, Petitioner.

*Opinion filed November 22, 1989.*

Georgina M. Mahoney, of Chicago, for the Administrator of the Attorney Registration and Disciplinary Commission.

George B. Collins, of Collins & Bargione, of Chicago, for petitioner.

CHIEF JUSTICE MORAN delivered the opinion of the court:

Petitioner, Anthony Joseph Polito, was disbarred on consent (107 Ill. 2d R. 762) on April 20, 1984. On June 17, 1988, petitioner filed his amended petition for reinstatement to the roll of attorneys pursuant to Supreme Court Rule 767 (107 Ill. 2d R. 767). The Administrator of the Attorney Registration and Disciplinary Commission (ARDC) filed objections to the petition. The hearing panel found that petitioner was rehabilitated and recommended that the petition be allowed. A majority of the Review Board also recommended that the petition be allowed. One member of the Review Board dissented and recommended that the petition be denied. The Administrator filed exceptions to the report and recommendation of the Review Board (107 Ill. 2d R. 753(e)(5)).

The only issue presented is whether petitioner should be reinstated to the roll of attorneys.

Petitioner was admitted to practice law in Illinois on November 18, 1965. Following his admission, petitioner held a variety of legal positions until 1970, when he opened his private practice. In 1976, petitioner converted a client's $120 bond refund. Four years later, in October 1980, while disciplinary proceedings were pending against him for the 1976 conversion, petitioner converted approximately $4,400 in clients' funds.

On November 26, 1980, a Review Board reprimanded petitioner for the 1976 conversion. Less than three years later, on October 28, 1983, a Review Board recommended that petitioner be disbarred for the 1980 conversions; the 1976 conversion was an aggravating factor. On April 20,

1984, petitioner was disbarred on consent (107 Ill. 2d R. 762).

On April 25, 1984, five days after petitioner was disbarred on consent, Michael Duerr retained him as defense counsel and received his business cards, which represented that he was an attorney. On May 16, 1984, petitioner went to court, entered his appearance on Duerr's behalf and obtained a continuance. On June 20, 1984, petitioner and Duerr went to the courthouse for a scheduled court date. While at the courthouse, an assistant State's Attorney approached petitioner and confronted him with his disbarment and engagement in the unauthorized practice of law. Petitioner fled the courthouse. Duerr later learned that petitioner was not licensed to practice law.

On September 12, 1984, petitioner applied for a position as an automobile salesman at Mont Clare Pontiac in Chicago. In his employment application, petitioner listed his present position as a "SELF-EMPLOYED ATTORNEY," when, in fact, he had been disbarred five months earlier.

On September 19, 1984, petitioner began working at Mont Clare Pontiac. On January 15, 1985, petitioner's employment with Mont Clare Pontiac was terminated, and one week later, on January 21, 1985, he began working at Borg Pontiac in Downers Grove, Illinois.

On January 25, 1985, petitioner sent letters to his clients notifying them that he could not continue to represent them. Supreme Court Rule 764 requires such letters and provides in part: "[w]ithin 21 days after an attorney has been *** disbarred on consent *** the attorney shall notify *** all clients to whom he is responsible for pending matters, of the fact that he cannot continue to represent them." (107 Ill. 2d R. 764.) Consequently, the letters which petitioner sent to his clients failed to comply

with Rule 764, because they were sent over nine months after he was disbarred on consent.

On February 25, 1985, petitioner's employment at Borg Pontiac was terminated. On March 4, 1985, petitioner began working at Thomas Dodge in Orland Park, Illinois. On March 8, 1985, petitioner voluntarily terminated his employment at Thomas Dodge in order to begin working at Olympia Dodge in Countryside, Illinois. On March 9, 1985, petitioner began working at Olympia Dodge and three weeks later, on March 27, 1985, his employment was terminated. On April 11, 1985, petitioner began working as a telephone salesman for Dial America Marketing, Inc., a telemarketing firm.

On May 10, 1985, while still employed by Dial America Marketing, petitioner submitted a verified employment application for a public aid caseworker position with the Illinois Department of Public Aid (IDPA). Petitioner's verified employment application contained the following misrepresentations: (1) in response to the question "Have you ever been discharged from a job?" petitioner indicated "no," when, in fact, he had been disbarred as an attorney and discharged from three automobile salesman positions; (2) petitioner indicated that he was a "SELF-EMPLOYED [ATTORNEY]" from July 1970 to September 1984, and further indicated that his reason for leaving his practice was "PERSONAL," when, in fact, he had been disbarred in April 1984; (3) petitioner indicated that he had been employed at Mont Clare Pontiac from September 1984 through April 1985, when, in fact, his employment was terminated by Mont Clare Pontiac on January 15, 1985. On May 11, 1985, petitioner was hired by the IDPA and he began working there on May 13, 1985.

On May 1, 1987, less than two years after he began working at the IDPA, petitioner submitted a false travel voucher and record for the period of March 23, 1987, through April 30, 1987. The false documents were sub-

mitted in order to conceal petitioner's unauthorized absences from work. On May 11, 1987, petitioner asked about the status of his travel voucher and his supervisor told him that there were questions about it. Petitioner then admitted that he had submitted a false travel voucher and record. In order to remedy the falsified documents, petitioner prepared a list of the visits that he failed to make and submitted a corrected travel voucher and record. Petitioner also testified that he may have submitted false travel vouchers and records in both January 1987 and February 1987.

On June 17, 1988, petitioner filed his amended petition for reinstatement. On July 6, 1988, petitioner told his IDPA supervisor that he needed the day off because his daughter was sick, when, in fact, he wanted the day off to attend a deposition in the present action.

The following facts occurred prior to petitioner's disbarment, but are relevant to his character. After opening his private practice in 1970, petitioner accepted cash from clients as payment for professional services rendered; however, he would not always report his cash income to the proper authorities. Petitioner continued this practice until 1981, when he was audited by both the Internal Revenue Service (IRS) and the Illinois Department of Revenue (IDR) for the tax year 1980. The IRS and the IDR discovered petitioner's failure to report cash income in 1980. Consequently, petitioner paid both a civil fraud penalty and the taxes on the unreported 1980 cash income.

Between the mid-1970s and the early-1980s, petitioner hustled clients and paid bribes to sheriffs and clerks outside the courtrooms at 11th and State Streets. Petitioner paid the bribes in order to get his cases called by the court.

In 1979, a judge, later prosecuted and convicted of acts involving dishonesty, approached petitioner and proposed a

fee-splitting arrangement to him. Although petitioner did not enter into a fee-splitting arrangement, he failed to report the judge's proposal to the proper authorities.

In 1980, petitioner offered to pay that judge $150 if he would make a ruling favorable to petitioner's client. The judge accepted the offer and ruled in favor of petitioner's client. Petitioner informed the ARDC of his bribe to the judge in 1987, prior to his filing this petition for reinstatement.

Rule 767(a) permits an attorney to petition for reinstatement no less than three years after entry of the order allowing disbarment on consent. (107 Ill. 2d R. 767(a).) When a petition for reinstatement has been filed, the petitioner has the burden of proving by clear and convincing evidence that he should be reinstated to the practice of law. (*In re Alexander* (1989), 128 Ill. 2d 524, 533.) In considering a petition for reinstatement, the focus is on the petitioner's rehabilitation and character. *In re Carnow* (1986), 114 Ill. 2d 461, 469.

Petitioner emphasizes that both the hearing panel and the Review Board recommended that he should be reinstated to the practice of law. However, the recommendations of both the hearing panel and the Review Board are merely advisory and are not binding on this court. (*Alexander*, 128 Ill. 2d at 534.) Accordingly, this court alone has the authority to decide whether or not a petition for reinstatement will be granted. *Alexander*, 128 Ill. 2d at 534.

Our review of this action is guided, but not limited, by the six factors listed in Rule 767(f):

"(1) the nature of the misconduct for which the petitioner was disciplined;

(2) the maturity and experience of the petitioner at the time discipline was imposed;

(3) whether the petitioner recognizes the nature and seriousness of the misconduct;

(4) when applicable, whether petitioner has made restitution;

(5) the petitioner's conduct since discipline was imposed; and

(6) the petitioner's candor and forthrightness in presenting evidence in support of the petition." (107 Ill. 2d R. 767(f).)

Furthermore, while this court endeavors for uniformity in reinstatement cases, each petition for reinstatement is unique and must be decided on its individual facts. *Alexander*, 128 Ill. 2d at 539.

The first factor under Rule 767(f) is "the nature of the misconduct for which the petitioner was disciplined." (107 Ill. 2d R. 767(f)(1).) At the time that petitioner consented to his disbarment, there was pending before this court a Review Board recommendation that he be disbarred for violating Rule 9—102 of the Code of Professional Responsibility (107 Ill. 2d R. 9—102 (Preserving Identity of Funds and Property of a Client)). Converting client funds is a serious violation of the Code of Professional Responsibility which brings the entire legal profession into disrepute. (*In re Holz* (1988), 125 Ill. 2d 546, 559.) More importantly, converting client funds is particularly reprehensible and offensive, because it destroys the foundation of the attorney-client relationship: trust.

The second factor under Rule 767(f) is "the maturity and experience of the petitioner at the time discipline was imposed." (107 Ill. 2d R. 767(f)(2).) Petitioner had been practicing law for over 18 years when he consented to his disbarment. Therefore, he was not a neophyte attorney whose misconduct can be attributed to youth and inexperience. See *Carnow*, 114 Ill. 2d at 470.

The third factor under Rule 767(f) is "whether the petitioner recognizes the nature and seriousness of the misconduct." (107 Ill. 2d R. 767(f)(3).) In both his petition and testimony before the hearing panel, the petitioner

expressed his regret and stated that he recognizes the nature and seriousness of his misconduct. However, petitioner's recognition of the nature and seriousness of his misconduct is subject to doubt, because he has contradicted his statements by his conduct. See *In re Schechet* (1985), 105 Ill. 2d 516, 522.

·Since the opening of his sole practice in 1970, petitioner: (1) failed to report all his cash income to the IRS and the IDR for a 10-year period; (2) hustled clients and paid bribes to sheriffs and clerks for nearly 10 years; (3) failed to report a judge to the proper authorities after the judge proposed a fee-splitting arrangement to him; (4) paid a bribe to a judge; (5) converted client funds on more than one occasion; (6) engaged in the unauthorized practice of law in his "representation" of Duerr; (7) misrepresented himself on employment applications following his disbarment; (8) failed to comply with the requirements of Supreme Court Rule 764; (9) falsified his IDPA travel voucher and record; and (10) lied to his IDPA supervisors. Consequently, petitioner's long history of improper conduct contradicts his alleged recognition of the nature and seriousness of his misconduct.

The fourth factor under Rule 767(f) is "when applicable, whether petitioner has made restitution." (107 Ill. 2d R. 767(f)(4).) There is no doubt that petitioner has made full restitution of the 1980 conversions and the 1976 conversion. In addition, petitioner made full restitution of the money he accepted from Duerr.

The fifth factor under Rule 767(f) is "the petitioner's conduct since discipline was imposed." (107 Ill. 2d R. 767(f)(5).) Since his disbarment on consent in 1984, petitioner has: (1) engaged in the unauthorized practice of law in his "representation" of Duerr; (2) misrepresented himself on employment applications; (3) failed to comply with the requirements of Supreme Court Rule 764; (4)

falsified his IDPA travel voucher and record; and (5) lied to his IDPA supervisors.

Petitioner emphasizes his work record at the IDPA, his progress in regular psychotherapy sessions, his volunteer work as an adult leader for the Boy Scouts and his volunteer work as a tutor in the Adult Literacy Program at Moraine Valley Community College as evidence of his rehabilitation. Petitioner's emphasis on his work record at the IDPA is entirely misplaced, because submitting false documents and lying to supervisors is completely unacceptable conduct. Furthermore, while his volunteer work and progress in psychotherapy are commendable and reflect favorably upon him, we cannot overlook the remainder of his less than sterling conduct.

In order to be admitted to the practice of law in Illinois, an applicant must establish that "he possesses the good moral character and general fitness necessary for the practice of law." (*In re DeBartolo* (1986), 111 Ill. 2d 1, 5.) Similarly, in a reinstatement action, the petitioner must reestablish his good moral character and general fitness to practice law. One important element of good moral character and general fitness to practice law is honesty. (*DeBartolo*, 111 Ill. 2d at 6.) Petitioner's engagement in the unauthorized practice of law, misrepresentations on employment applications, falsification of IDPA documents and lying to IDPA supervisors reflect his penchant for dishonesty. Consequently, petitioner's conduct since disbarment has demonstrated a serious lack of concern for the truth.

The sixth factor under Rule 767(f) is "the petitioner's candor and forthrightness in presenting evidence in support of the petition." (107 Ill. 2d R. 767(f)(6).) There is no doubt that petitioner has been candid and forthright throughout these proceedings. As the hearing panel stated: "[Petitioner] has told us things that would be painful for any individual."

In reviewing petitioner's petition, this court must consider "the impact that [his] conduct has, or will have, on the legal profession, the public and the administration of justice." (*In re Kuta* (1981), 86 Ill. 2d 154, 157.) We recognize that petitioner has made full restitution and has been candid and forthright throughout these proceedings. In contrast, we recognize the serious nature of converting client funds, petitioner's maturity and experience at the time he was disbarred, his alleged recognition of the nature and seriousness of his misconduct and his lack of honesty since disbarment. Petitioner's conduct since disbarment continues to undermine the legal profession, the public and the administration of justice in this State. Consequently, this court does not believe that petitioner has clearly and convincingly established that he is either rehabilitated and ready to return to the practice of law or an individual of good moral character.

For the aforementioned reasons, petitioner's petition for reinstatement to the roll of attorneys is denied.

*Petition denied.*