(No. 54391.—

*In re* FRANK JOHN KUTA, Attorney, Petitioner.

*Opinion filed September 30, 1981.*

Mary M. Conrad, of Chicago, for the Administrator of the Attorney Registration and Disciplinary Commission.

Robert A. Korenkiewicz, of Chicago, for petitioner.

MR. JUSTICE RYAN delivered the opinion of the court:

The question in this disciplinary case is whether Frank John Kuta should be reinstated to the practice of law in this

State. In November 1974 Kuta was convicted in the Federal court for extortion and making false statements in his Federal income tax return. The conviction was based on a payment of $1,500 to Kuta, who was then an alderman in Chicago. The payment was made in an effort to obtain a zoning change. In March 1975 Kuta was suspended from practice pursuant to our Rule 761 (73 Ill. 2d R. 761). In June 1975 the Court of Appeals for the Seventh Circuit affirmed Kuta's conviction. On March 5, 1976, after the United States Supreme Court denied *certiorari*, Kuta voluntarily withdrew his name from the roll of attorneys and was disbarred on consent.

From October 1, 1975, to February 11, 1977, despite the fact that he had been suspended and later disbarred, Kuta was employed as a law clerk in the office of his former partner. In the fall of 1976 he filed a petition for reinstatement to practice law. When the Administrator of the Attorney Registration and Disciplinary Commission objected and alleged that Kuta's employment constituted practicing law, he withdrew his petition for reinstatement and made arrangements for employment elsewhere. The present petition for reinstatement was filed in January 1980.

The hearing panel of the Attorney Registration and Disciplinary Commission conducted a hearing on this petition for reinstatement and unanimously recommended that Kuta be reinstated as an attorney. The Administrator for the Commission filed exceptions to the report of the hearing panel. The Review Board, after reviewing the record of the hearing, unanimously recommended to this court that Kuta not be reinstated. Kuta filed exceptions to this report, and the case was orally argued before the court at the May 1981 term.

This court has recently adopted a code of professional responsibility governing the conduct of attorneys (79 Ill. 2d R. 1—101 *et seq.*). One objective in adopting the code was,

through compliance therewith, to achieve a high degree of integrity in the legal profession in this State, thereby enhancing the public's respect for law and lawyers. In the application of our disciplinary machinery established by our rules (73 Ill. 2d Rules 751 through 771), including the procedure for reinstatement of attorneys, we must consider the impact that an attorney's conduct has, or will have, on the legal profession, the public and the administration of justice. (*In re Zahn* (1980), 82 Ill. 2d 489, 493; *In re Wonais* (1979), 78 Ill. 2d 121, 124; *In re Thomas* (1979), 76 Ill. 2d 185, 189; *In re LaPinska* (1978), 72 Ill. 2d 461, 473.) It is the petitioner's burden to prove by clear and convincing evidence that he should be reinstated to the practice of law. See generally *In re Groshong* (1980), 83 Ill. 2d 27; *In re Wigoda* (1979), 77 Ill. 2d 154.

Our Rule 767 (73 Ill. 2d R. 767) governs reinstatement of attorneys who have been disbarred, disbarred on consent, or suspended until further order of the court. The last part of this rule sets out the areas of concern in passing on a petition for reinstatement as follows:

"The petition shall be referred to a hearing panel. The panel shall consider the following factors, and such other factors as the panel deems appropriate, in determining the petitioner's rehabilitation, present good character and current knowledge of the law:

(a) the nature of the misconduct for which the petitioner was disciplined;

(b) the maturity and experience of the petitioner at the time discipline was imposed;

(c) whether the petitioner recognizes the nature and seriousness of the misconduct;

(d) when applicable, whether petitioner has made restitution;

(e) the petitioner's conduct since discipline was imposed; and

(f) the petitioner's candor and forthrightness

> in presenting evidence in support of the petition.
>
> The hearing panel shall make a report of its findings and recommendations. A copy of the report shall be served upon the petitioner and upon the Administrator.
>
> The review procedure shall be the same as provided in Rule 753(e) for disciplinary cases." (73 Ill. 2d R. 767.)

Thus the petitioner must establish that he has been rehabilitated, that he is presently of good character, and that he currently is knowledgeable as to the law. While the hearing panel found that Kuta has been sufficiently rehabilitated to be readmitted, the Review Board specifically found that he had failed to demonstrate his rehabilitation. As evidenced by these contrary findings, rehabilitation is an imprecise term, and the proof presented to establish that state is not always viewed the same by all who consider it.

Our rule specifically requires, in determining rehabilitation as well as the present good character and current knowledge of the law, that the hearing panel consider the petitioner's conduct since discipline was imposed. (73 Ill. 2d R. 767(e).) In considering one's conduct, however, it must be kept in mind that, because of differences in personalities, the same conduct should not always lead to the same conclusion. For instance, extensive involvement in civic, religious and charitable activities may in one case demonstrate a penitent and contrite spirit, whereas in another individual such involvement may result from a brazen and defiant attitude. In several reinstatement cases that have been considered by this court both the petitioner and the Administrator have placed heavy emphasis on community, religious and charitable involvement of the petitioner as indicative of rehabilitation. Although such evidence may be relevant, we consider that the petitioner's conduct in other areas should also be considered.

In this case Kuta presented evidence concerning his involvement in religious, charitable and civic affairs, as well

as his involvement in areas relating to his employment. Besides the petitioner, 11 witnesses testified before the hearing panel. In addition, some 33 affidavits were submitted. The evidence disclosed that Kuta is a member of St. Bruno's Catholic Church. Its pastor, the Rev. Edmund Szlamza, testified that Kuta served as a commentator there for several years and that he has a reputation for reliability. Kuta is also a member of several civic and service organizations, including the St. Bruno Holy Name Society, the Archbishop Weber Knights of Columbus, Polish American Historical Society, the Catholic War Veterans, Maria Father's Club, University of Illinois Father's Club, the Archer Heights Civic Association, and the Alhambras (a group of laymen organized to help in foster programs and care of retarded children). Kuta stated that he has shunned holding office in any of these organizations because of his conviction, which, possibly, could be embarrassing to the organization. The evidence shows that although not of the Jewish faith, petitioner is supportive of several Jewish organizations, both financially and by attendance at their functions. One witness stated, "Bigotry is not a word in his vocabulary."

Kuta also presented considerable evidence through his own testimony and that of others concerning his employment activities and the positions of trust and responsibility that he has held since his disbarment. He is presently employed full time as the president of the Chicago Auto Employees Credit Union. In his capacity as president he is responsible for managing the employees, he prepares financial reports, makes recommendations to the board of directors regarding investments, keeps the books and records, and is considered the chief operating officer of the credit union. He also occupies a part-time position as treasurer of the Archer Heights Credit Union. Both positions require that he be bonded by the Cumis Insurance Company in the amount of $1 million. Additionally, petitioner is self-em-

ployed under the business name of Archer Insurance, Accounting and Tax Service, and during the year of 1978 he did consulting work for Northwestern Savings and Loan Association.

During 1977 petitioner held the position of Director of Communications at the Illinois Credit Union League and, as such, was in charge of disseminating public news releases. He also managed the Education and Training Department and Member Services Department of the trade association. He was responsible for the printing of a monthly magazine. As noted earlier in this opinion, in addition to the testimony of witnesses, the petitioner presented many affidavits. These indicated that Kuta is a man of integrity and deserves to be readmitted to the practice of law.

The Administrator contends that, despite the information presented, the petitioner should not be readmitted. He bases that position on the petitioner's failure to make restitution of the $1,500 which was the basis for the extortion conviction, and because he felt the petitioner was less than candid in his "petition for reinstatement." Our Rule 767(d) also directs that the hearing panel consider, "when applicable, whether petitioner has made restitution." If an attorney's disbarment is based on the misappropriation of clients' or another's funds, restitution would clearly be "applicable" in considering a petition for reinstatement. It is not so clearly applicable when the money has been paid to the attorney by one attempting to bribe the recipient. In such a case the payor is likewise guilty of wrongdoing, and it would appear that he would have no equitable claim to the money paid. Nonetheless, in our case, Kuta came into possession of the money wrongfully and likewise has no legal or equitable claim to it. Kuta contends that he is substantively innocent of the two felony counts of which he was convicted. He does not deny, however, that he received $1,500. In fact, he has paid the Federal income tax on it. In his brief he admits that he testified that he was sorry for

what he had done. However, he relies on *In re Wigoda* in support of his contention that the assertion of his innocence should not bar reinstatement. We do not dispute this contention; however, his right to assert his *bona fide* belief in his innocence of the crime of which he was convicted does not determine whether or not he can retain the money he received, and to which he has no legitimate claim. In *Chicago Park District v. Kenroy, Inc.* (1980), 78 Ill. 2d 555, this court held that a public officer occupies a fiduciary relationship to the political entity on whose behalf he serves, and that when the fiduciary responsibility has been breached, a cause of action on the part of the beneficiaries to seek restitution has been recognized. *Kenroy, Inc.* involved litigation resulting from the bribery of Alderman Paul Wigoda, the attorney involved in *In re Wigoda*. We must conclude that Kuta, as an alderman, occupied a fiduciary position in relation to the city and if he received $1,500 in that capacity, he has no right to retain the same.

The Administrator also argues that the petitioner was less than truthful when submitting the petition for reinstatement. Specifically, the Administrator contends that Kuta failed to mention that he had engaged in the practice of law subsequent to his suspension and disbarment.

Without a doubt, a disbarred or suspended attorney should not serve as a law clerk or a paralegal during his disbarment or suspension. The line of demarcation between the work that a paralegal or a law clerk may do and those functions that can only be performed by an attorney is not always clear and distinct. The opportunity for a disbarred or suspended attorney who is serving as a paralegal or a law clerk to violate that line of demarcation is too great and too inviting. Also, the public is not aware of the differences between the work of a paralegal and that of an attorney. For a disbarred attorney to be seen performing what the public may perceive as legal functions can only lessen the public's regard for the effectiveness of our attempt to

discipline errant attorneys, and would foment the belief that the public was not being protected from unethical attorneys.

In Kuta's case, however, we do not view his employment as a law clerk for his former partner as a reason for denying reinstatement. It appears that he accepted this employment in good faith. After the Administrator had objected to his original petition for reinstatement because of his employment, he sought the advice of other attorneys, who informed him that they thought such employment was permissible. However, he, nonetheless terminated his employment as a law clerk and sought employment in non-law-related fields.

The Attorney Registration and Disciplinary Commission Rule 11.1(9) requires that a petition for reinstatement include "a statement of whether or not the petitioner's suspension, disbarment or disbarment on consent was in any way related to his misappropriation or failure to account for any monies, and the amounts involved, held or received by him on behalf of third parties and, if so, whether he has since made an accounting for or restitution of the monies, together with the details of the restitution or accounting, including the dates and amounts of the restitution or accounting, and the names and addresses of the persons to whom such restitution or accounting was made." (Ill. Rev. Stat. 1979, ch. 110A, following par. 771.) In response to that question, the petitioner denied that his conviction was related to a misappropriation of funds. The Administrator contends that Kuta's response demonstrated a lack of candor.

The rule does not clearly fit the factual picture of this case. The rule can reasonably be read to refer only to monies that came into the hands of the attorney from a client or were paid to him for the use of another. Although we have above indicated that the $1,500 can be viewed as being held by Kuta in trust, by virtue of a breach of his

fiduciary duty as an alderman, failure to read the rule as including such conduct within its purview does not demonstrate a lack of candor.

Kuta acknowledged that the cause of his trouble is to be found in his political activities, and he has resolved to divorce himself from political involvement in the future. During the course of reestablishing himself, he has proved his integrity by holding positions of trust and responsibility with various credit union organizations. In this manner, he has demonstrated to the public that he is worthy of holding a position of trust. We therefore feel that continued disbarment is not necessary to the protection of the public or to maintaining the respect for the legal profession. We find that Kuta has, by clear and convincing evidence, established his rehabilitation.

We cannot, however, at this time, order his reinstatement as an attorney because of his failure to divest himself of the $1,500 he received while an alderman. The money should not be returned to the payor of the bribe. Since Kuta received the payment while he was acting as an alderman, we direct that the $1,500 be paid to the city of Chicago. Upon deposit with the clerk of this court of a receipt for this amount from the city of Chicago the petitioner shall be reinstated on the role of attorneys of this State.

*Petitioner conditionally*
*reinstated.*

MR. JUSTICE SIMON took no part in the consideration or decision of this case.