(No. 63589 )

*In re* DONALD S. CARNOW, Petitioner.

*Opinion filed November 20, 1986.*

462

464

WARD, J., took no part.

Melvin B. Lewis, of Chicago, for petitioner.

Jerome Larkin, of Chicago, for the Administrator of the Attorney Registration and Disciplinary Commission.

JUSTICE MORAN delivered the opinion of the court:

Petitioner, Donald S. Carnow, along with Benjamin Rosenthal, was disbarred on May 21, 1979. (See *In re Rosenthal* (1978), 73 Ill. 2d 46.) On June 18, 1984, Carnow filed a petition for reinstatement pursuant to Supreme Court Rule 767 (103 Ill. 2d R. 767). The Administrator of the Attorney Registration and Disciplinary Commission filed objections to the petition, arguing that petitioner should not be reinstated because his initial misconduct had been extremely serious, he had failed to make restitution, and he had failed to demonstrate that he was rehabilitated. A hearing panel ruled that petitioner had no duty to make restitution. However, a majority of the hearing panel felt that petitioner's initial misconduct had been so serious that he should not be reinstated under a petition filed after the minimum waiting period required by Rule 767. A dissenting panel member disagreed and recommended that petitioner be reinstated to the roll of attorneys.

A unanimous Review Board, with three members not participating, agreed with the hearing panel that under the particular facts presented petitioner had no duty of restitution. However, the Review Board disagreed with the hearing panel majority's recommendation that the petition be denied, and unanimously recommended that petitioner be reinstated.

The Administrator objects to the Review Board's recommendations and raises two questions for review: (1) Under the facts of this case is petitioner required to make restitution as a prerequisite to reinstatement? and (2) Has petitioner met his burden of demonstrating that he is qualified for reinstatement?

The facts underlying petitioner's disbarment were set forth in this court's earlier opinion, and thus we need not discuss the facts in great detail. In 1969 petitioner was working for another attorney, Rosenthal, on a "space-for-services" basis. One of Rosenthal's clients, Joseph Pecord, desired a zoning variance for a parcel of property so that he could convert the property's use from a savings and loan to a nursing home. In reference to the variance, petitioner participated in the payment of $20,000 to Stanley Zima, an employee of the Chicago city council's Committee on Building and Zoning and a Democratic Party committeeman. The payment was to prevent Zima from interfering with the granting of the requested variance by the zoning board of appeals. The zoning board of appeals was a body completely distinct from the city council committee. Although Zima's position with the city of Chicago involved no powers or duties with regard to the zoning board of appeals, Zima apparently had the ability to influence the board through his political powers.

In 1972 petitioner met with Federal prosecutors regarding the payment to Zima. Petitioner claimed that he had been physically threatened prior to the meeting, and

therefore he denied any payments to Zima. Later, after receiving a promise of protection as well as immunity from prosecution, petitioner testified against Zima, leading to Zima's conviction in Federal court on charges of extortion and income tax evasion.

This court's earlier opinion noted that the hearing panel, in its findings of fact, found that Carnow and Rosenthal "were retained by Pecord for the lawful, legal purpose of obtaining a zoning variance; [and] that, on the record before them, it appeared Pecord was entitled to the requested zoning variance but that his original petition was denied because of 'political implications' ***. The panel further found that it was 'probably believable that [respondents] and their families were threatened by Zima with economic and bodily harm' and that their client was also threatened." *In re Rosenthal* (1978), 73 Ill. 2d 46, 54.

Petitioner's reinstatement petition states that "[h]e is fully conscious of his guilt, and of the significance of his failure fully to acknowledge that wrongdoing during the disbarment proceedings. He is contrite and remorseful, and regrets the impact of his conduct upon the profession, the public, his family, his friends, and himself." This statement was elaborated upon before the hearing panel, where petitioner testified:

"The legal profession in the main is not corrupt. The judicial system is not corrupt. There are infrequent situations where lawyers do get involved in unethical and criminal conduct.

I feel I have contributed to a false impression that has been left with the community, not by my conduct alone but the aggregation and the accumulation of the conduct over a period of years. And I feel badly for it. I do.

I have defamed the profession, and I regret it. ***

I think that my conduct in 1969, the conduct in 1972, and my conduct in not striking my name when the complaint was filed was reprehensible."

Petitioner testified that he had not made any restitution to the city of Chicago for the $20,000 bribe paid to Zima. However, it was his belief that restitution was not required because he had not profited from the bribe, and the city had suffered no loss. He stated that he would be willing to pay restitution if the court ruled that restitution was appropriate.

Petitioner also testified that he has gained insights into his personality since his disbarment which have helped him improve his character. In particular he realizes that he had had problems in part because of his need to always be in control of matters, and his need to always be right. He now realizes that these were serious character flaws, and believes he has made great progress in modifying his attitudes.

Two of petitioner's character witnesses specifically supported his position that he had modified his attitudes. One witness testified that petitioner had formerly been "presumptuous" and "brazen" but since 1979 had matured and become much more relaxed and patient. Another witness also stated that petitioner had become much more mature since his disbarment. All of petitioner's character witnesses testified that petitioner, since 1979, had been reliable and trustworthy, and was generally regarded to be honest by the members of various business, civic and social groups. Petitioner had participated in several civic and charitable activities, including service as a vice-president and member of the board of directors of Temple Beth-El in Chicago and work at the Bernard Horwich Jewish Community Center.

There was also undisputed evidence that petitioner had fully complied with all disclosure requirements of Rule 767 and had scrupulously avoided the practice of law since being disbarred. His current work involves consulting on pension benefit plans, and petitioner testified that he carefully follows the guidelines for employee

benefit planning published by the Standing Committee on Unauthorized Practice of Law of the American Bar Association. He testified that he has refused to accept clients who did not also engage a lawyer.

The hearing panel, in its findings, found that petitioner's filings and the evidence he presented were "complete and candid and provided all of the information required by Supreme Court Rule 767." The panel found no evidence that petitioner had engaged in the practice of law since his disbarment, and found that petitioner "appears to have led an exemplary life since disbarment." The panel found that "[t]here is no indication that the City of Chicago *** suffered loss by reason of [petitioner's conduct]," and therefore the panel was of the opinion that restitution was not a necessary requirement to petitioner's reinstatement. However, a majority of the panel concluded that "the nature of the misconduct for which petitioner was disbarred is so serious that it would be inappropriate for him to be reinstated as the result of a petition filed immediately upon the expiration of the minimum time he is required to wait under Supreme Court Rule 767." A dissenting member of the panel, however, compared the circumstances of the case to other cases where reinstatement petitions had been granted and concluded that petitioner's conduct was no more serious than that of other attorneys who had been reinstated after the minimum period. The dissent therefore argued that petitioner should be reinstated.

A unanimous Review Board agreed with the dissenting panel member, and additionally noted that, at the time of the Review Board's report, nearly seven years had elapsed since petitioner's disbarment. The Review Board recommended reinstatement.

Rule 767(a) allows a disbarred attorney to petition for reinstatement no less than five years after the entry of an order of disbarment. (103 Ill. 2d R. 767(a).) The most

important focus in evaluating such a petition is on the petitioner's rehabilitation and present character. (*In re Berkley* (1983), 96 Ill. 2d 404, 411; *In re Wigoda* (1979), 77 Ill. 2d 154, 159.) Rule 767(f) lists six specific factors which are to be considered in determining whether the petitioner has been rehabilitated:

"(1) the nature of the misconduct for which the petitioner was disciplined;

(2) the maturity and experience of the petitioner at the time discipline was imposed;

(3) whether the petitioner recognizes the nature and seriousness of the misconduct;

(4) when applicable, whether petitioner has made restitution;

(5) the petitioner's conduct since discipline was imposed; and

(6) the petitioner's candor and forthrightness in presenting evidence in support of the petition." 103 Ill. 2d R. 767(f).

When a disbarred attorney petitions for reinstatement the burden is on the petitioner to prove his or her qualification for reinstatement by clear and convincing evidence. (*In re Rothenberg* (1985), 108 Ill. 2d 313, 323; *In re Schechet* (1985), 105 Ill. 2d 516, 521.) This court alone decides whether or not the petition is granted, and thus the hearing panel can only make recommendations as to the disposition of the petition. (*In re Harris* (1982), 93 Ill. 2d 285, 291-92.) However, the hearing panel's findings of fact are entitled to virtually the same weight as the findings of any other trier of fact. 93 Ill. 2d 285, 292.

In the case at bar there is little dispute as to four of the factors listed in Rule 767. The hearing panel specifically found that petitioner was candid and forthright on his petition and in the presentation of evidence, and this finding is amply supported by the record. The hearing panel also found that petitioner's conduct since disbar-

ment "appears \*\*\* exemplary," and there is absolutely no evidence in the record to the contrary. Further, the petition itself and petitioner's testimony before the hearing panel demonstrate that petitioner fully recognizes the seriousness of his prior misconduct. Finally, petitioner's misconduct occurred when he was a young and inexperienced attorney, and there is evidence that he has matured considerably since his last misconduct in 1972.

The Administrator, however, argues in part that petitioner's failure to pay $20,000 in restitution to the city of Chicago demonstrates his lack of rehabilitation. It is true that the failure to make restitution is a factor which is considered in evaluating a petition for reinstatement. (See, e.g., In re Rothenberg (1985), 108 Ill. 2d 313; In re Schechet (1985), 105 Ill. 2d 516; In re Kuta (1981), 86 Ill. 2d 154.) However, before restitution can be required there must be some basis for restitution—usually either an improper benefit to the disbarred attorney or a loss to some victim. See In re Keane (1984), 102 Ill. 2d 397, 400-01.

In the case at bar petitioner paid a $20,000 bribe to Zima while Zima was employed by the city of Chicago. A public official is a fiduciary to the public entity he or she serves, and third parties who benefit from the breach of that fiduciary duty are deemed to have received the benefits in constructive trust on behalf of the public entity. (Chicago Park District v. Kenroy, Inc. (1980), 78 Ill. 2d 555, 564-65.) However, Zima had no official connection with the zoning board of appeals, the independent body which granted Pecord's zoning variance. Zima was employed by a city council committee which had previously denied the variance. As the hearing panel found, "Zima was not acting in his capacity as an employee of the City in connection with his activity in the zoning matter. The City was not directly concerned with the matter and it was not within the scope of Zima's employment. He was

not an employee of the zoning board before which the matter was resolved." Zima, therefore, had no fiduciary relationship with the particular public entity which granted the variance.

It is true that a public official may breach a fiduciary duty even when not actually employed at the time of the breach by the public entity involved. In *People ex rel. Daley v. Warren Motors* (1986), 114 Ill. 2d 305, 315, a former deputy commissioner of the Cook County board of appeals achieved a reduction in the defendant's tax assessments by entering the board's offices after hours and fraudulently altering tax records. This court held that the commissioner had breached his fiduciary duties notwithstanding that he was no longer employed by the board because the reduction "was accomplished through [his] experience as a deputy commissioner and his access to the office's records." (114 Ill. 2d 305, 315.) This situation is distinguishable from the case at bar because here, as the hearing panel found, Zima was neither an employee nor a former employee of the zoning board of appeals.

Moreover, the hearing panel in petitioner's original disbarment proceeding specifically found that the city suffered no loss whatsoever as a result of petitioner's conduct. The panel found that the bribe was paid to persuade Zima to refrain from improperly using his influence to deny Pecord a zoning variance that he might otherwise have obtained. (See *In re Rosenthal* (1978), 73 Ill. 2d 46, 54.) The hearing panel in this reinstatement action agreed with the earlier panel, finding "no indication that the City of Chicago, by whom Zima was employed, suffered loss by reason of the payment."

In addition, there is no evidence that petitioner received any personal benefit as a result of his misconduct. As a "space-for-services" assistant of Rosenthal petitioner did not even share in Pecord's legal fee.

As this court noted in its earlier opinion, petitioner's participation in an extortion payment is not in any way *excused* by the fact that he gained no benefit and caused no loss. (*In re Rosenthal* (1978), 73 Ill. 2d 46, 55-56.) However, in *In re Keane* (1984), 102 Ill. 2d 397, the court made clear that the mere fact that a public official is involved in misconduct is insufficient grounds upon which to require the payment of restitution. When there is no loss to a victim, and no improper profit by a fiduciary, there is simply no grounds for restitution. We therefore agree with the hearing panel and the Review Board that restitution is not required in this case.

The final factor to be considered is the seriousness of the misconduct for which petitioner was disbarred. A majority of the hearing panel believed that petitioner's misconduct was so serious that he should not be reinstated upon a petition filed after only the minimum period required by Rule 767. The Review Board disagreed and recommended that petitioner be reinstated.

While each disciplinary case is unique, the court strives toward uniformity of treatment insofar as possible. (*In re Williams* (1986), 111 Ill. 2d 105, 116; *In re Young* (1986), 111 Ill. 2d 98, 104.) This principle applies to reinstatement petitions as well as original disciplinary proceedings. (*In re Wigoda* (1979), 77 Ill. 2d 154, 163.) While petitioner's misconduct was extremely serious, in several cases this court has reinstated disbarred attorneys who had engaged in misconduct at least as serious. In *In re Wonais* (1979), 78 Ill. 2d 121, the petitioner had been disbarred after he solicited a bribe from a client, allegedly to go to the State's Attorney to prevent filing of charges in a criminal case. In fact the State's Attorney was not involved at all, and the petitioner had intended to keep the money for himself. Upon his indictment for solicitation to commit bribery petitioner voluntarily allowed his name to be stricken from the rolls. Slightly

more than three years later his reinstatement petition was granted.

Similarly, in *In re Wigoda* (1979), 77 Ill. 2d 154, the petitioner was convicted on Federal income tax charges for failing to report a $50,000 bribe received to influence him in his position as a Chicago alderman. He was reinstated less than four years after his disbarment on consent. Finally, in *In re Kuta* (1981), 86 Ill. 2d 154, petitioner had been convicted of extortion and income tax fraud in connection with a $1,500 bribe he had accepted in his capacity as a Chicago alderman. Five years after his voluntary disbarment he still had not made restitution to the city for the amount of the bribe. He was nonetheless conditionally reinstated, the condition being that he pay the $1,500 restitution.

In the case at bar it has been more than seven years since petitioner's disbarment, and 14 years since his last misconduct. His misconduct, while serious, occurred when he was young and inexperienced, and was partly induced by economic and physical threats. He now recognizes the seriousness of his misconduct, and his conduct since disbarment has been "exemplary." We believe that petitioner has met his burden of proving rehabilitation and present good character, and fairness indicates that he be treated no more harshly than were the petitioners in *Wonais, Wigoda,* and *Kuta.* Therefore, the instant petition is granted, and petitioner is reinstated to the roll of attorneys licensed to practice law in Illinois.

*Petitioner reinstated.*

JUSTICE WARD took no part in the consideration or decision of this case.